**The below described is SIGNED.**



**Dated: August 11, 2006**

**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number: 05-38602 |
|---|---|
| STEVEN RICHARD BARKELL and PAMELA SHERI BARKELL, | Chapter 13 |
| Debtors. | |

**MEMORANDUM DECISION**

It is a common story. Debtors list what they believe is the fair market value of their home on Schedule A. The chapter 7 trustee investigates, finds out that the home is worth significantly more and begins to administer the liquidation of an estate that would have, without the trustee's efforts, been a no asset case with no distribution to creditors. Such is the case here but with one twist that is also becoming more common — the debtors' conversion of a chapter 7 case to chapter 13 when a chapter 7 trustee is in "hot pursuit" of undisclosed or undervalued assets. Before the chapter 7 trustee could liquidate the home, the debtors converted their case to one under chapter 13 terminating the chapter 7 trustee's appointment and leaving him unpaid. As a result, the parties have asked the Court to resolve whether a chapter 7 trustee is entitled to an administrative claim for work performed on behalf of the bankruptcy estate even after the debtors

have exercised their option under 11 U.S.C. § 706[1] to convert their case to one under chapter 13. After reviewing the chapter 7 trustee's fee applications, applicable case law, and listening to oral arguments, this Court concludes that a chapter 7 trustee is entitled to a portion of pre and post-conversion compensation requested for work performed on behalf of the bankruptcy estate.

## I. BACKGROUND

Steven and Pamela Barkell (the "Debtors") filed a chapter 7 petition on October 13, 2005. On Schedule A, filed that same day, the Debtors valued their home in Draper at $416,000. The Debtors listed liens on the home totaling $425,500. At first glance, this appeared to be a no asset case. But Stephen Rupp, the chapter 7 trustee (Rupp), began an intensive investigation regarding the actual value of the home and various transfers the Debtors made prior to filing. Rupp discovered that the Debtors had significantly undervalued the home on Schedule A. Rupp enlisted the help of a realtor, Paula Draper (Draper), to assist him in valuing and selling the home. As a result of Rupp's efforts, the home was eventually sold for $510,000: an amount far greater than the $416,000 the Debtors originally listed on Schedule A which significantly augmented the estate. But the actual sale of the home was only accomplished after the Debtors converted their chapter 7 case to one under chapter 13. This conversion terminated the appointment of Rupp as chapter 7 trustee and turned over the administration of the case to J. Vincent Cameron, the chapter 13 trustee.

---

[1] Future statutory references are to title 11 of the United States Code unless otherwise noted. In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) making changes to title 11 of the United States Code. All statutory references in this Memorandum Decision refer to the former version of title 11 in place at the time this case was filed unless otherwise indicated. It should be noted that whether the option to convert under § 706 is absolute is currently on appeal to the United States Supreme Court. *In re Marrama,* 430 F.3d 474 (1st Cir. 2005) *cert. granted*, 126 S.Ct. 2859 (U.S. Jun 12, 2006) (NO. 05-996).

Rupp filed his First Application for Compensation requesting fees of $8,935 for services performed on behalf of the estate from November 7, 2005 to March 31, 2006. This fee application did not allocate work between Rupp as the chapter 7 trustee, and work performed as the trustee's attorney, and Rupp never made application to the Court to appoint McKay Burton &Thurman (MB&T), his attorneys. Various parties including the chapter 13 trustee and an unsecured creditor, Mile Hi Specialty Foods, Inc. (Mile Hi), objected to Rupp's first application. One of the grounds for objection was Rupp's failure to allocate time between himself as a trustee and his work as an attorney with MB&T. A hearing on the first application was held but continued without date.

Subsequently, Rupp filed an Amended Application for Compensation requesting priority administrative compensation for "actual, necessary services rendered in the amount of $12,741 . . . in accordance with Bankruptcy Code sections 330 and 331."[2] Instead of allocating time between trustee's hours and attorney's hours (as the Court had ordered), the amended application credited Rupp with performing all itemized tasks in his trustee capacity. A hearing on the amended application was held on July 26, 2006. At the hearing, the trustee argued that the Court should approve the amended application applying the legal theory of quantum meruit. In response, unsecured creditor Mile Hi argued, *inter alia*, that there was no statutory basis to award fees to a chapter 7 trustee after the case has been converted to chapter 13. After hearing oral argument, the Court took the matter under advisement.

---

[2] Trustee's Amend. App. at ¶ 16.

## II. DISCUSSION

As a result of this dispute, the Court must determine whether Rupp should be compensated for the work he performed both before and after the case was converted to a chapter 13. At the outset, the Court acknowledges that there is a split of authority between bankruptcy courts on this issue. Some courts have ruled — as Mile Hi would have this Court rule — that there is no statutory basis to award a chapter 7 trustee compensation after the case has been converted.[3] Others, and it would appear the majority of courts, have allowed a chapter 7 trustee compensation after a case is converted based on various legal theories including: the multiple or composite trustee theory;[4] the separate and distinct case theory;[5] the constructive disbursement theory;[6] and quantum meruit.[7] After reviewing the relevant cases, considering all of the above-

---

[3] *See In re Silvus,* 329 B.R. 193 (Bankr. E.D. Va. 2005) (holding that the plain meaning of § 326 barred an award of fees to a chapter 7 trustee when the case was converted to a case under chapter 13 prior to any distribution by the chapter 7 trustee.); *In re Murphy*, 272 B.R. 483 (Bankr. D. Colo. 2002) (finding that the plain meaning of § 326 limits a chapter 7 trustee's compensation to amounts based on actual distributions).

[4] *In re Rodriguez,* 240 B.R. 912, 915 (Bankr. D. Colo. 1999) (Section 326(a) "must be read as a generic reference to the composite 'trustee' and to the aggregate distributions made in the case by the composite 'trustee' to all parties in interest other than the debtor").

[5] *In re Yale Mining Corp.,* 59 B.R. 302 (Bankr. W.D. Va. 1986) (awarding compensation based on the theory that the § 326 cap applies separately to each trustee).

[6] *In re Hages*, 252 B.R. 789 (Bankr. N.D. Cal. 2000) (holding that the distributions made by the chapter 13 trustee are imputed to the chapter 7 trustee when calculating the chapter 7 trustee's fee).

[7] *In re Scott*, No. 05B 10001, 2006 WL 566441 (Bankr. N.D. Ill. March 7, 2006) (awarding chapter 7 trustee compensation after case was converted to chapter 13 based on quantum meruit). The Bankruptcy Appellate Panel for the Ninth Circuit has expressly refused to apply the legal theory of quantum meruit in awarding professional fees. *See In re Monument Auto Detail, Inc.,* 226 B.R. 219, 224 (9th Cir. BAP 1998) ("the Code and Rules preclude fee awards for services performed on behalf of a bankruptcy estates based on state law theories not provided for by the Code, such as quantum meruit").

listed theories, and weighing the equities of this particular case, this Court determines that Rupp is entitled to a portion of the compensation requested based on § 330 and quantum meruit.

### A. Sections 330 and 326

The applicable portions of the Bankruptcy Code that guide this analysis are as follows: "Section 330 authorizes compensation and reimbursement of expenses for officers of the bankruptcy estate, including trustees."[8]  Section 330 provides:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 –
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses.
> (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

A chapter 7 trustee's § 330 compensation is expressly limited by § 326.  Section 326(a) provides a statutory cap for chapter 7 trustees based on the amount actually disbursed to creditors.  Some courts have used § 326 to deny a chapter 7 trustee's request for compensation in cases converted from chapter 7 to chapter 13 when no distribution has been made based upon what they interpret as a plain reading of the statute.[9]  Those courts reason that a chapter 7 trustee is *only* entitled to compensation — beyond the § 330(b) minium amount — when the chapter 7 trustee has actually made disbursements to creditors.  This Court expressly rejects the reasoning in those cases.  The statutory caps found in § 326(a) are dependent upon (1) the existence of a chapter 7 trustee

---

[8] *In re Colburn*, 231 B.R. 778, 781 (Bankr. D. Or. 1999) (allowing administrative claim for chapter 7 trustee and trustee's attorney based on § 330).

[9] *Silvus,* 329 B.R. at 221; *Murphy*, 272 B.R. at 485-86.

appointed by the court and (2) an actual distribution by that trustee. Neither factor is present here and, as a result, § 326 does not apply to the facts of this case. "[T]he terms of § 326(a) do not address the circumstances of Chapter 7 cases where assets have been found, that convert to Chapter 13 before assets are liquidated and disbursed."[10] In this case, Rupp performed significant work that benefitted the estate prior to the Debtors converting their case to chapter 13. Such work is required by § 704. Were this Court to extend the terms of § 362(a) to limit Rupp's compensation in this case, he will have performed substantial services benefitting the chapter 13 trustee, the estate, and creditors for which he would receive absolutely no compensation. Such a result is indefensible and not warranted by § 326(a).

The legal theory of quantum meruit provides further support for this conclusion. As a matter of policy, it is "unacceptable and unwarranted to penalize hard-working interim trustees whose services have contributed to the administration of the bankruptcy estate."[11] This theory is particularly applicable when debtors convert their case, with a trustee in hot pursuit, in an attempt to avoid the consequences of the chapter 7 trustee's investigation.[12] One Court has gone as far as saying that an award of fees based on quantum meruit "is essentially what section 330 mandates."[13] Although there was no evidence presented on this point, it does appear that the Debtors converted their case in reaction to Rupp's aggressive investigation into various transfers

---

[10]  *Colburn*, 231 B.R. at 782.

[11]  *Rodriguez*, 240 B.R. at 915.

[12]  *In re Collins*, 210 B.R. 528, 540 (Bankr. N.D. Ohio 1997) (awarding chapter 7 trustee fees for reasonable and necessary services performed after case was converted to one under chapter 13).

[13]  *Rodriguez*, 240 B.R. at 914.

and the inaccurate valuation of the Debtor's home. These facts justify the application of quantum meruit.

Having found that § 326(a)'s limitations are inapplicable to this factual situation and that compensation is justified under the legal theory of quantum meruit, the Court must now determine the standard by which it awards compensation. Because § 362(a) is inapplicable in a case converted from chapter 7 to chapter 13 prior to disbursement, the Court is left with the standard found in § 330. The Court will, therefore, examine Rupp's amended application to determine what portion of the application was reasonable and necessary.

### B. Trustee's Compensation Pre-Conversion v. Post-Conversion

Before the Court can engage in the § 330 necessary and reasonable review of Rupp's amended application, the Court must resolve whether the compensation requested should have been allocated between Rupp and his attorney. In the first application, Rupp failed to distinguish between work performed as the chapter 7 trustee and work performed as the trustee's attorney. Various parties objected to this request arguing that Rupp failed to distinguish between trustee time and attorney time and any legal work performed should not be awarded because the Court never appointed a trustee's attorney. The Court agrees with this argument. Section 330 provides for payment of trustees, examiners, or a professional person employed under § 327 or § 1103 — an award of compensation under § 330 is dependent upon court appointment. The Court never appointed an attorney to represent Rupp. In fact, application to employ an attorney for Rupp was never made to the Court.[14] As a result, the Court has no statutory authority to award any

---

[14] This ruling is consistent with this Court's observation found in *In re Amos*, No. 98-B 32761, 2000 WL 33672947 at *3 n.11 (Bankr. D. Utah Feb. 16, 2000) (stating that the Court cannot award § 503(b)(1)(A) priority to claims in an attempt to rectify the fact that the claimant was never appointed by the court).

compensation for legal work performed on behalf of the trustee. The distinction between work performed as a chapter 7 trustee and work performed as an attorney for a trustee can be a difficult one to make but it is necessary to the proper administration of the estate. The proper person to make the determination is the applicant since he has first hand knowledge of the actual work behind the time entries. The Court specifically ordered Rupp to file an amended application allocating his work between trustee hours and attorney hours. Rupp has failed to do so because, he argues, under quantum meruit the distinction is unnecessary. Since Rupp's legal position is rejected by the court, and Rupp has essentially refused to make the allocation between trustee time and attorney time, the Court is left with the allocation task.

After reviewing Rupp's amended application, the Court finds that all services rendered by Rupp in his capacity of chapter 7 trustee prior to conversion of the case were reasonable and necessary. The pre-conversion amount requested is reasonable and necessary given the work performed, the hourly rates charged, the time invested in the case, and the benefit the estate realized.[15] After deducting all hours that should have been allocated to the trustee's attorney, the Court finds that Rupp invested 26 hours pre-conversion administering this case and that $5,974.50 should be paid as an administrative claim.

The question of post-conversion compensation is more difficult. Rupp would have this Court adopt the "inextricably intertwined" standard articulated in *In re Washington*.[16] In that case, the court approved post-conversion compensation because "the services performed after the

---

[15] *See Scott,* 2006 WL 566441 at *3.

[16] 232 B.R. 814, 818 (Bankr. S.D. Fla. 1999) (awarding trustee and attorney compensation for work done before and after conversion of case from chapter 7 to chapter 13 and finding that post-conversion fees were "so inextricably intertwined with the services performed prior to the conversion, that an award of fees for such services are reasonable").

date of conversion are so inextricably intertwined with the services performed prior to the conversion, that an award of fees for such services are reasonable."[17] This type of extraordinary relief should be allowed rarely and application of this standard must be applied on a case-by-case basis.[18] The preparation and defense of Rupp's own fee application, preparation of a letter to the chapter 13 trustee, meetings with the chapter 13 trustee, and turnover of information to the chapter 13 trustee were necessary functions that were inextricably intertwined with the administration and subsequent turnover of the case to the chapter 13 trustee. Without these efforts, the chapter 13 trustee would not have been prepared to accurately review the proposed chapter 13 plan and address various concerns at confirmation. Because the above-listed services were inextricably intertwined and substantially benefitted the estate, the Court will allow compensation of $2,419.50 (representing 11.7 hours of work) to Rupp for the work performed in winding up the case and turning it over to the chapter 13 trustee.

This Court, however, declines to award Rupp compensation for any other work performed post-conversion. Section 348(e) terminates the appointment of the chapter 7 trustee and any chapter 7 trustee work performed after a case is converted is done "for the estate only as a volunteer."[19] The Court, therefore, will not award Rupp any compensation for fees incurred defending the Draper commission. Although the Court ultimately allowed Draper some

---

[17]   *Id*. (the court awarded post-conversion compensation because "time and expenses were incurred after conversion based upon pre-conversion proceedings brought by the Movants").

[18]   *In re Moore*, 235 B.R. 414, 416-17 (Bankr. W.D.K.Y. 1999), *aff'd sub no. Schilling v. Moore*, 286 B.R. 846 (W.D.K.Y. 2002) (applying quantum meruit on a case-by-case basis and stating that "the court does not envision windfalls for the trustee merely because a debtor converts for reasons unrelated to action by the trustee").

[19]   *Scott,* 2006 WL 566441 at *3.

compensation, Rupp was not required to defend her application. Most of this work was performed post-conversion, and it would be unfair to deplete the funds available to creditors in order to compensate Rupp for the volunteer services that benefitted Draper.

### C.  Payment of Compensation

Rupp urges the Court to allow him to offset his fees against the $8,634.16 he currently holds. The Court finds that it is proper for Rupp to turn over the $8,634.16 to the chapter 13 trustee. Rupp will be entitled to a priority administrative claim of $8,394 as per § 503(b)(2), § 507(a)(1),[20] and § 1322(a)(2) and should be paid with similarly classified claims under the terms of the Debtors' confirmed plan. The chapter 13 trustee will be entitled to fees on any distribution made to Rupp.

### III.  CONCLUSION

Chapter 7 trustees should be compensated for work performed prior to conversion. This is especially true, as is the case here, when debtors convert the case in an effort to avoid the consequences of the chapter 7 trustee's investigation. Section 330 of the Bankruptcy Code provides this Court with the statutory authority to allow the chapter 7 trustee compensation, and the legal theory of quantum meruit provides further support for this conclusion. As for post-conversion compensation, the awarding of these fees is akin to a walk along a treacherous praecipe fraught will peril — were a court to go too far in awarding post-conversion fees, it could slip into a dark chasm without a statutory net where chapter 7 trustees could continue to perform unfettered work and be compensated even though § 348(e) expressly terminates their appointment. For this reason, post-conversion awards should be granted only in the most

---

[20]  Under BAPCPA this provision can now be found at § 507(a)(2).

extraordinary cases. An order memorializing this Memorandum Decision will be issued separately.

------------------------------------------END OF DOCUMENT------------------------------------------



_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Anna W. Drake
215 South State Street
Suite 500
Salt Lake City, UT 84111
    *Attorney for Debtor*

Steven and Pamela Barkell
731 East 2200 North
Lehi, UT 84043
    *Debtor(s)*

Mark Swan
Swan Law Firm, PLLC
2240 S. 5370 W.
West Valley City, UT 84120
    *Attorney for Creditor*

Kevin R. Anderson tr
405 South Main Street
Suite 600
Salt Lake City, UT 84111
    *Chapter 13 Trustee*

Stephen W. Rupp
McKay, Burton & Thurman
170 South Main Street, Suite 800
Salt Lake City, UT 84101
    *Former Chapter 7 Trustee*

Office of the United States Trustee
Boston Building, Suite 100
9 Exchange Place
Salt Lake City, Utah 84111